```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                        WESTERN DIVISION
```

_____

WILFREDO LORA,

  Petitioner,

vs.             Cv. No. 04-2923-B/P

T.C. OUTLAW, et al.,

  Respondents.

_____

```
                       ORDER OF DISMISSAL
            ORDER DENYING MOTION TO EXPEDITE AS MOOT
                              AND
          ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
```
_____

  On November 10, 2004, Petitioner Wilfredo Lora, Bureau of Prisons ("BOP") inmate registration number 42980-083, an inmate at the Federal Correctional Institution at Memphis, filed this petition under 28 U.S.C. § 2241 and paid the filing fee. On March 24, 2006, he filed a motion to expedite. The Clerk is directed to record the Respondent as T.C. Outlaw, Lora's actual custodian. The Clerk is further directed to remove all references to Warden Wendt, Lora's former custodian as Respondent.

  Lora challenges a disciplinary offense for conduct which disrupts the security of the institution, alleging that he was convicted by false testimony, deprived of his right to call witnesses, and deprived of due process during disciplinary proceedings. He alleges that he has exhausted his administrative remedies, although the underlying substance of his grievance was

not addressed. Lora seeks dismissal of the conviction, the restoration of 27 days of good conduct time, and transfer to a facility closer to his family.

Any analysis of a habeas petition under § 2241 by a federal prisoner must begin with the statute that authorizes the court to exercise jurisdiction over the prisoner's custodian. Habeas relief is available if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. Lora is entitled to habeas relief only if the BOP is confining him in violation of the Constitution or laws of the United States. Reduced to its essence, the issue is thus whether he can claim a right to due process in connection with a disciplinary proceeding and the revocation of sentence credits, and not whether the BOP has merely interpreted its regulations correctly in conducting one or more disciplinary proceedings.

An inmate does not have a protected right to be housed in a particular BOP institution. Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye v. Haymes, 427 U.S. 236, 242-43 (1976). Furthermore, an inmate does not have a liberty interest in a particular security classification or housing assignment. Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Newell v. Brown, 981 F.2d 880, 883 (6th Cir. 1992); Beard v. Livesay, 798 F.2d 874, 876 (6th Cir. 1986). Rather, 18 U.S.C. § 3621 vests absolute discretion in the BOP to designate "the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b). See, e.g.,

Brown-Bey v. United States, 720 F.2d 467, 470 (7th Cir. 1983); Lyons v. Clark, 694 F. Supp. 184, 187 (E.D. Va. 1988).

A prison inmate has no right not to be convicted of prison disciplinary offenses, only a right to due process if the conviction deprives him of a liberty interest recognized by federal law. See generally Wolff v. McDonnell, 418 U.S. 539, 564-71 (1974)(defining scope of due process application to prison disciplinary hearings).[1] In general,

> [a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.

Montanye v. Haymes, 427 U.S. 236, 242 (1976).

Previously, prison disciplinary cases were analyzed by considering whether "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State [or federal

---

[1] Even when a liberty interest is at stake, the scope of due process in prison disciplinary cases is very narrow. See Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445, 455-56 (1985)(holding disciplinary findings satisfy due process if supported by any evidence, however meager); Ponte v. Real, 471 U.S. 491, 495-99 (1985)(finding disciplinary board need not make contemporaneous record of reasons live witnesses for inmate not allowed); Baxter v. Palmigiano, 425 U.S. 308, 319-323 (1976)(holding disciplinary board may draw adverse inference from inmate's silence; inmate has no right to cross-examination); Wolfel v. Morris, 972 F.2d 712 (6th Cir. 1992)(inmate could not be deprived of due process by disciplinary charge because acquittal precluded claim of cognizable injury); Hensley v. Wilson, 850 F.2d 269 (6th Cir. 1988)(requiring contemporaneous record for in camera court review if the disciplinary conviction is not supported by other adequate evidence); Hudson v. Edmonson, 848 F.2d 682 (6th Cir. 1988)(citing Hill and also holding decision on appropriate sanctions should not be second-guessed upon review); Turney v. Scroggy, 831 F.2d 135 (6th Cir. 1987)(holding a court may not reexamine a disciplinary board's credibility choices in weighing the evidence at a hearing).

government] has created a protected liberty interest." Hewitt v. Helms, 459 U.S. 460, 472 (1983). Because the BOP has regulations governing discipline in federal prisons, 28 C.F.R. §§ 541.2 to 541.68, a number of courts had concluded that those regulations, construed together with the remaining regulations defining disciplinary offenses, penalties, and the roles and duties of the various disciplinary officials, placed substantive conditions on the discretion of BOP employees to confine an inmate to disciplinary segregation, and thus created a protected liberty interest, so that an inmate was entitled to due process in connection with the imposition of disciplinary segregation. See Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991)(BOP regulations essentially codify procedural requirements enunciated in Wolff); Adams v. Gunnell, 729 F.2d 362, 368 (5th Cir. 1984)(BOP regulations create liberty interest).

In Sandin v. Conner, 515 U.S. 472, 484-87 (1995), the Supreme Court, without explicitly overruling Hewitt, returned to the question left open in Wolff: whether inmates even have a liberty interest in freedom from segregation, punitive or administrative. The Court concluded that they do not.

> The time has come to return to the due process principles we believe were correctly established and applied in Wolff and Meachum. Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also Board of Pardons v. Allen, 482 U.S. 369 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek, 445 U.S. at 493 (transfer to mental hospital), and Washington, 494 U.S. at 221-222 (involuntary

4

> administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.
>
> * * *
>
> Conner asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation. Neither Bell v. Wolfish, 441 U.S. 520 (1979), nor Ingraham v. Wright, 430 U.S. 651 (1977), requires such a rule. . . . We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest. . . . We hold, therefore, that neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in Wolff. The regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life.

Sandin, 515 U.S. at 483-84, 486, 487 (footnotes and some citations omitted). Sandin thus focuses not on the content of regulations, but on the "nature of the deprivation" visited upon the inmate. Id. at 481. Absent "atypical and significant hardship," a change in the conditions of confinement simply does not inflict a cognizable injury that merits constitutional protection, regardless of the motivation of the official when making the change. Id. at 484-86.

Federal courts no longer look to language in laws or BOP regulations in connection with prison assignment claims to determine if a prisoner is deprived of any liberty interest protected by the Due Process Clause. Rimmer-Bey v. Brown, 62 F.3d 789, 790-91 (6th Cir. 1995). Rather, when analyzing due process claims federal courts do not look to state laws or regulations to ascertain whether they create a liberty interest in the imposition

5

of disciplinary penalties or reclassifications.  Neither do the courts consider the subjective motives of prison officials. Instead, the Court focuses on the nature of the deprivation itself.

> After [Sandin], prisoners may no longer peruse state statutes and prison regulations searching for the grail of limited discretion.  Instead, a prisoner has a liberty interest only in "freedom[s] from restraint . . . impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at ___, 115 S. Ct. at 2294.

Orellana v. Kyle, 65 F.3d 29, 31 (5th Cir. 1995).  According to Orellana, only deprivations that clearly impinge on the duration of confinement, will henceforth even possibly qualify for constitutional "liberty" status.  Id. at 31-32.  Thus, after Sandin, assignment to a particular prison does not constitute an atypical and significant hardship affecting the duration of confinement and does not constitute the deprivation of a liberty interest.

There is no right under the Constitution to earn or receive sentence credits.  Hansard v. Barrett, 980 F.2d 1059, 1062 (6th Cir. 1992).

> '[T]he Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison,' Wolff v. McDonnell, [481 U.S. 539,] 557 [(1974)], despite the undoubted impact of such credits on the freedom of inmates.

Hewitt v. Helms, 459 U.S. 460, 467-68 (1983).  Furthermore, "good time credits reduce only the period of incarceration, not the sentence itself."  Raines v. U. S. Parole Com'n, 829 F.2d 840, 844 (9th Cir. 1987).  Neither is there any fundamental right to parole or to release from a sentence of incarceration that has itself been

6

lawfully imposed. See Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979). Thus petitioner has no due process claim because he was deprived of sentence credits or the opportunity to earn sentence credits.

To the extent plaintiff is deprived of statutory good time due to his disciplinary convictions, any effect on the total period of time he will serve in prison is too uncertain and attenuated to constitute the deprivation of a liberty interest.[2] Petitioner is thus not entitled to any of the procedural protections enunciated in Wolff or its progeny.

To the extent plaintiff complains of an inadequate grievance procedure in his attempts to informally resolve his dispute, there is no right to an internal prison grievance procedure. See, e.g., Corn v. Lewis, 1993 U.S. App. LEXIS 15350 (6th Cir. June 15, 1993);[3] Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Flowers v. Tate, 925 F.2d 1463 (6th Cir. 1991); Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Nor is there any right to a particular result from that procedure.

---

[2] In addition to rejecting any notion that any convicted prisoner can ever enjoy a liberty interest in freedom from mere confinement in isolation or segregation, the Sandin court noted that any possible effect on Conner's future release was too attenuated to constitute a deprivation of a liberty interest protected by the Due Process Clause. Sandin, 515 U.S. at 487.

[3] Although citation to unpublished Sixth Circuit precedents is disfavored, this case is referred to in the absence of clear published case law from this Circuit "because it establishes the law governing the present action and 'there is no [Sixth Circuit] published opinion that would serve as well.'" Norton v. Parke, 892 F.2d 476, 479 n.7 (6th Cir. 1989).

7

Accordingly, "it appears from the application that the applicant or person detained is not entitled" to any relief. 28 U.S.C. 2243. An order for the respondent to show cause need not issue. The petition is DENIED. The motion to expedite is DENIED as moot due to the dismissal of the petition.

Appeals of habeas petitions under 28 U.S.C. § 2254 and motions under 28 U.S.C. § 2255 are governed by 28 U.S.C. § 2253 and require the district court to consider whether to issue a certificate of appealability. Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063 (6th Cir. 1997). Section 2253 does not apply to habeas petitions by prisoners seeking review of federal agency determinations under § 2241. McIntosh v. United States Parole Comm'n, 115 F.3d 809, 810 (10th Cir. 1997); Ojo v. I.N.S., 106 F.3d 680, 681-82 (5th Cir. 1997); Bradshaw v. Story, 86 F.3d 164, 166 (10th Cir. 1996). Nevertheless, a habeas petitioner seeking to appeal is still obligated to pay the $255 filing fee required by 28 U.S.C. §§ 1913 and 1917.[4] Under the Prison Litigation Reform Act of 1995 (PLRA), 28 U.S.C. § 1915, it is unclear how habeas petitioners establish a right to proceed in forma pauperis and avoid this filing fee.

---

[4] Currently, the fee for docketing an appeal is $250. Effective April 9, 2006, the appellate filing fee will increase to $450. See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

> Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

Although the Sixth Circuit has concluded that the various filing fee payment requirements and good faith certifications of amended § 1915 do not apply to § 2254 cases, it has not resolved whether these requirements apply to § 2241 cases. <u>Kincade v. Sparkman</u>, 117 F.3d 949, 951-52 (6th Cir. 1997). <u>Cf.</u> <u>McGore v. Wrigglesworth</u>, 114 F.3d 601 (6th Cir. 1997)(instructing courts regarding proper PLRA procedures in prisoner civil-rights cases, without mentioning § 2241 petitions).

The Tenth Circuit, however, has held that the provisions of the PLRA do not apply to habeas cases of any sort or to § 2255 motions. <u>See</u> <u>McIntosh</u>, 115 F.3d at 810; <u>United States v. Simmonds</u>, 111 F.3d 737, 743 (10th Cir. 1997). An unpublished Sixth Circuit opinion has adopted this approach in affirming a decision from this district. <u>Graham v. U.S. Parole Com'n</u>, No. 96-6725, 1997 WL 778515 (6th Cir. Dec. 8, 1997), <u>aff'g</u>, <u>Graham v. United States</u>, No. 96-3251-Tu (W.D. Tenn. Dec. 4, 1996). Because the Court finds the reasoning of <u>McIntosh</u> persuasive, and because this conclusion naturally follows from the Sixth Circuit's decision in <u>Kincade</u>, the Court concludes that the PLRA does not apply to § 2241 petitions.

Pursuant to <u>Kincade</u>, a petitioner must seek leave to proceed <u>in forma pauperis</u> from the district court under Fed. R. App. 24(a), which provides:

> A party to an action in a district court who desires to proceed on appeal <u>in forma pauperis</u> shall file in the district court a motion for leave to so proceed, together with an affidavit, showing, in the detail prescribed by Form 4 of the Appendix of Forms, the party's inability to pay fees and costs or to give security therefor, the party's belief that that party is entitled to redress,

9

>    and a statement of the issues which that party intends to
>    present on appeal.

The Rule further requires the district court to certify in writing whether the appeal is taken in good faith, and to deny the certificate if the appeal would be frivolous.

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. Id. Accordingly, it would be inconsistent for a district court to determine that a complaint is too frivolous to be served, yet has sufficient merit to support an appeal in forma pauperis. See Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the court to dismiss this petition as devoid of merit also compel the conclusion that an appeal would be frivolous. It is therefore CERTIFIED, pursuant to F.R.A.P. 24(a), that any appeal in this matter by petitioner is not taken in good faith, and he may not proceed on appeal in forma pauperis.

IT IS SO ORDERED this 30th day of March, 2006.

>                          s/ J. DANIEL BREEN
>                          UNITED STATES DISTRICT JUDGE