IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|                    |   |                    |
|--------------------|---|--------------------|
| WILFREDO LORA,     |   |                    |
|   Petitioner,      |   |                    |
| vs.                |   | No. 04-2923-JDB/tmp |
| T.C. OUTLAW,       |   |                    |
|   Respondent.      |   |                    |

ORDER DENYING MOTION FOR DISCOVERY (DOCKET ENTRY # 24)
ORDER OF DISMISSAL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

Petitioner Wilfredo Lora, Bureau of Prisons inmate registration number 42980-083, an inmate at the Federal Correctional Institution ("FCI-Memphis") in Memphis, filed a pro se petition pursuant to 28 U.S.C. § 2241 on November 10, 2004. Lora challenged a disciplinary conviction for conduct disrupting the security of an institution, alleging that he was convicted by false testimony, denied of his right to call witnesses, and deprived of due process during disciplinary proceedings. The Court issued an order on March 30, 2006, denying the petition because Lora failed to allege the deprivation of a protected liberty interest. Judgment was entered on March 31, 2006. Lora filed a motion for reconsideration which was denied on March 20, 2007.

Petitioner appealed and on February 6, 2008, the United States Court of Appeals for the Sixth Circuit remanded the case for consideration of Lora's claim that the Discipline Hearing Officer (DHO) wrongfully refused his request for a witness. On February 15, 2008, the Court directed Outlaw to respond to the petition, which he did on March 7, 2008. Lora also submitted a motion for discovery (Docket Entry ("D.E.") #24) on March 26, 2008.

This Court is not authorized to conduct a de novo review of the evidence presented at the disciplinary hearing. Instead, the Court must determine whether the hearing afforded Petitioner satisfied the requirements of due process. The motion for discovery (D.E. #24) is thus DENIED.

In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court held that, where a prisoner is charged with a disciplinary offense that may result in loss of good time credit, due process requires (I) written notice of the charges at least twenty-four (24) hours prior to the hearing, id. at 563-64; (ii) the opportunity to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals," id. at 566; and (iii) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action, id. at 564. Moreover, "revocation of good time does not comport with 'the minimum requirements of procedural due process' . . . unless the findings

of the prison disciplinary board are supported by some evidence in the record." Superintendent, Massachusetts Correctional Instit., Walpole v. Hill, 472 U.S. 445, 454 (1985); see also id. at 455-57.

Respondent's "response opposing petition" sets forth the procedures that were followed in Lora's disciplinary hearings and explains why those procedures satisfy the standards articulated in Wolff. See R. at 2-4, 8-11; see also 18 U.S.C. § 4042(a)(3) (authorizing BOP to discipline prisoners); 28 C.F.R., Part 541 (disciplinary procedures).

Lora was notified on May 4, 2004, that he was being charged with Conduct Disruptive to the Security or Orderly Running of the Institution, Most like Encouraging a Group Demonstration in violation of Offense Code 299(212). (Respondent's Exhibit 1, Declaration of A. Sankey, Paralegal Specialist and Administrative Remedy Clerk, Mid-Atlantic Regional Office, Bureau of Prisons, Att. B.) After review by the Unit Discipline Committee ("UDC"), the case was referred to the Discipline Hearing Officer ("DHO"). Lora was advised of his rights at the discipline hearing on May 7, 2004. (Id., Att. C.) Petitioner had previously elected to have a staff representative present, however on the date of the hearing, the staff representative could not attend due to illness. (Id., Atts. C.) Lora was informed that he had the option of postponing his hearing or obtaining another staff representative. (Id., Att. C.) He declined both options and elected to proceed with the hearing

alone. (Id.) The waiver of staff representative also contains the notation in Lora's handwriting that he "cho[se] not to call [his requested] witness during the Dho hearing." (Id., Att. E.) Alongside Lora's signature was the notation "under duress." (Id.)

The DHO summarized the evidence presented at the hearing as follows:

> The DHO finds that you did commit the prohibited act of code 299(212), Conduct Which Disrupts the Security and Orderly Running of the Institution most like Encouraging a Group Demonstration, while you were housed at FCI Gilmer, on April 15, 2004, when you made copies of BP-8s concerning triple bunking at FCI Gilmer, and told as many inmates who would take them, to submit them to their unit team.
>
> The specific evidence relied upon to support this finding, was the eyewitness account of R. Proffitt, SIS Lieutenant, who provided written testimonial, dated May 3, 2004, declaring that upon the conclusion of an SIS investigation, it had been determined that you and inmate Muhammad, Abdul-Aziz reg. #200017-101 made copies of a one page single spaced, typed "attachment", which was penned by you and Muhammad, complaining about the possibility of some of the living areas in specific housing units, being triple bunked. These forms were handed to any other inmate who would accept them for filing BP-8s. Inmate Lora admitted to handing out the attachments in an attempt to file a Class Action lawsuit against the Federal Bureau of Prisons. Inmates Moore, Denzil reg. #35275-060 and Brown, Kempest reg. #00685-007 identified you and Muhammad, Abdul as giving the attachment forms to them. These actions were disrupting the security and orderly running of the institution due to inmates becoming enticed and agitated over the possibility of being triple bunked.
>
> At the DHO hearing, you denied any guilt and gave the DHO 7 pages, single spaced, handwritten documents as your documentary evidence. You commenced questioning Mr. Reed. I informed you to discontinue your questioning as you were not permitted to talk to or ask questions of the witness. You began yelling and demanding that the

4

> hearing be stopped and continued to demand that you be
> permitted to question your witness. I informed you that
> if you continued yelling and demanding, you would be
> removed from the hearing and it would continue without
> you. You started yelling again and I called for the
> officer and had you removed. The hearing continued
> without you, who had become argumentative, loud and
> hostile.
>
> I have considered your documentary evidence. However,
> you have not provided any evidence which would vindicate
> your contention that staff are lying about your
> involvement in the incident. I have given greater weight
> to the investigative account of R. Proffitt, SIS
> Lieutenant, as he is very specific in his account of the
> incident. The officer has no reason to falsely accuse
> you of this incident, while it would be to your benefit
> to deny your actions.
>
> Therefore, the DHO finds that you violated code 299(212),
> Conduct Which Disrupts the Security and Orderly Running
> of the Institution most like Encouraging a Group
> Demonstration of the Inmate Disciplinary Policy.

Sankey Decl., Att. C. The DHO relied on the written statement of SIS Lieutenant Proffitt, who described the incident in detail.[1]

Lora contends that the DHO advised him that he must sign the waiver of staff representative "or she would prolong the hearing another four week[s]." (Petitioner's memorandum, D.E. #2, p. 18.) He points out that the DHO report does not state why his requested witness was not called. (Id. at p. 22.) Petitioner has supplied the Court with Rollins' affidavit which states that when Rollins

---

[1] The May 4, 2004 statement indicates that 38 inmates lined up at Counselor Reed's door on April 15, 2004, to submit the copied BP8s provided by Lora and Muhammad. Town halls had been previously been held by Unit Teams about the possibility of triple bunking, and due to the multitude of BP8s submitted, town halls "were re-given to address any complaints pertaining to triple bunking. Upon inmates Muhammad and Lora being placed in the Special Housing Unit, complaints pertaining to triple bunking, although still present, [] declines drastically." (Id., Att. B.)

5

went to the office "to attempt to get authorization to leave the Unit and go to SHU as Mr. Lora's witness, the officer explained to me that the DHO did not need to see me for Mr. Lora's DHO hearing." (Rollins affidavit, p. 2.) Rollins also states that his testimony would have been that before Lora typed and distributed the memorandum on triple bunking, he attended an inmate council meeting as an inmate representative, where he asked Warden Bledsoe, Associate Warden Hill and Captain Setler about the "proper and accepted method of redress inmates could use to challenge the planned triple bunking" and Associate Warden Hill stated "that as long as the inmates utilized the administrative remedies process and the courts they would be in compliance with [BOP] rules." (Id., pp. 1-2.)

There is no general constitutional right of a prison inmate to have a staff representative in disciplinary proceedings. See Hudson v. Hedgepeth, 92 F.3d 748, 751 (8th Cir. 1996). Due process requires that inmates be provided with the aid of a staff representative only where the inmate is illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." See Wolff v. McDonnell, 418 U.S. at 570; Hedgepeth, 92 F.3d at 751; Franklin v. Aycock, 795 F.2d 1253, 1263 (6th Cir. 1986). Lora's presentation of claims in this

complaint demonstrates his literacy and comprehension of the proceedings and issues presented.

The record reflects that Petitioner waived both his staff representative and his right to call his chosen witness. He contends that his written waiver was signed under duress. The report of the DHO demonstrates Lora's displeasure with the hearing procedures upon learning that he could not cross-examine BOP Witness Reed. However, the written summary contains no objection by Lora to the absence of Witness Rollins. His behavior toward the BOP Witness and DHO resulted in his removal from the proceedings and negated his ability to object to Rollins' absence.

Most importantly, however, if Lora's waiver was for some reason invalid, on the facts of this case, any violation of his right to call witnesses was harmless. Errors made by prison officials in denying witness testimony at disciplinary hearings are subject to harmless error review. Grossman v. Bruce, 447 F.3d 801, 805 (10th Cir. 2006); Piggie v. Cotton, 342 F.3d 660, 666 (7th Cir. 2003); Brown v. Braxton, 373 F.3d 501, 508 (4th Cir. 2004); Powell v. Coughlin, 953 F.2d 744, 750 (2d Cir. 1991). The testimony to be offered by Inmate Rollins was that the Associate Warden stated that inmates could challenge triple bunking through the administrative remedy process and the courts. Such testimony begs the obvious and was clearly irrelevant. While any individual inmate was permitted to use the administrative remedy process or the courts to challenge

the policy, the Associate Warden's statement did not grant Lora carte blanche to draft, photocopy, and distribute multiple BP8s in an attempt to orchestrate a demonstration or class action by fellow inmates. Any error by the DHO by not calling Inmate Rollins as a witness was harmless. The petition is DENIED and DISMISSED.

Appeals of habeas petitions under 28 U.S.C. § 2254 and motions under 28 U.S.C. § 2255 are governed by 28 U.S.C. § 2253 and require the district court to consider whether to issue a certificate of appealability. Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063 (6th Cir. 1997). Section 2253 does not apply to habeas petitions by federal prisoners under § 2241. McIntosh v. United States Parole Comm'n, 115 F.3d 809, 810 (10th Cir. 1997); Ojo v. I.N.S., 106 F.3d 680, 681-82 (5th Cir. 1997); Bradshaw v. Story, 86 F.3d 164, 166 (10th Cir. 1996). Nevertheless, a habeas petitioner seeking to appeal is still obligated to pay the $455 filing fee required by 28 U.S.C. §§ 1913 and 1917. Under the Prison Litigation Reform Act of 1995 (PLRA), 28 U.S.C. § 1915, it is unclear how habeas petitioners establish a right to proceed in forma pauperis and avoid this filing fee.

Although the Sixth Circuit has concluded that the various filing fee payment requirements and good faith certifications of amended § 1915 do not apply to § 2254 cases, it has not resolved whether these requirements apply to § 2241 cases. Kincade v. Sparkman, 117 F.3d 949, 951-52 (6th Cir. 1997). Cf. McGore v.

8

Wrigglesworth, 114 F.3d 601 (6th Cir. 1997)(instructing courts regarding proper PLRA procedures in prisoner civil-rights cases, without mentioning § 2241 petitions).

The Tenth Circuit, however, has held that the provisions of the PLRA do not apply to habeas cases of any sort or to § 2255 motions. See McIntosh, 115 F.3d at 810; United States v. Simmonds, 111 F.3d 737, 743 (10th Cir. 1997). An unpublished Sixth Circuit opinion has adopted this approach in affirming a decision from this district. Graham v. U.S. Parole Com'n, No. 96-6725, 1997 WL 778515 (6th Cir. Dec. 8, 1997), aff'g, Graham v. United States, No. 96-3251-Tu (W.D. Tenn. Dec. 4, 1996). Because the Court finds the reasoning of McIntosh persuasive, and this conclusion naturally follows from the Sixth Circuit's decision in Kincade, the Court concludes that the PLRA does not apply to § 2241 petitions.

Pursuant to Kincade, a petitioner must seek leave to proceed in forma pauperis from the district court under Fed. R. App. 24(a), which provides:

> A party to an action in a district court who desires to proceed on appeal in forma pauperis shall file in the district court a motion for leave to so proceed, together with an affidavit, showing, in the detail prescribed by Form 4 of the Appendix of Forms, the party's inability to pay fees and costs or to give security therefor, the party's belief that that party is entitled to redress, and a statement of the issues which that party intends to present on appeal.

The Rule further requires the district court to certify in writing whether the appeal is taken in good faith, and to deny the certificate if the appeal would be frivolous.

The good faith standard is an objective one. <u>Coppedge v. United States</u>, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. <u>Id.</u> The same considerations that lead the Court to dismiss this petition also compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to F.R.A.P. 24(a), that any appeal in this matter by Petitioner would not be taken in good faith, and he may not proceed on appeal <u>in</u> <u>forma</u> <u>pauperis</u>.

IT IS SO ORDERED this 16th day of May, 2008.

          s/ J. DANIEL BREEN
          UNITED STATES DISTRICT JUDGE